# EXHIBIT A

# STATE OF NORTH CAROLINA

_____ WAKE _____ County

| | |
|---|---|
| **File No.** | |

In The General Court Of Justice
☒ District ☐ Superior Court Division

**Name Of Plaintiff**
SHANIQUA BURRELL

**Address**
c/o Suzanne Begnoche, Attorney at Law, P.O. Box 2035

**City, State, Zip**
Chapel Hill, NC 27515

## VERSUS

**Name Of Defendant(s)**
DUKE ENERGY PROGRESS, LLC and ONLINE
INFORMATION SERVICES, INC.

## CIVIL SUMMONS
☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)**

G.S. 1A-1, Rules 3 and 4

**Date Original Summons Issued**

**Date(s) Subsequent Summons(es) Issued**

### To Each Of The Defendant(s) Named Below:

| **Name And Address Of Defendant 1** | **Name And Address Of Defendant 2** |
|---|---|
| DUKE ENERGY PROGRESS, LLC | ONLINE INFORMATION SERVICES, INC. |
| Officer, director, managing agent, or agent for service of process | Officer, director, managing agent, or agent for service of process |
| CT Corporation System, 160 Lake Mine Court, Suite 200 | c/o James Blair, Registered Agent, P.O. Box 1489 |
| Raleigh, NC 27615 | Winterville, NC 28590 |

### A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| **Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)** | **Date Issued** | **Time** |
|---|---|---|
| Suzanne Begnoche, Attorney at Law | | ☐ AM ☒ PM |
| P.O. Box 2035 | **Signature** | |
| Chapel Hill, NC 27515 | | |
| | ☐ Deputy CSC    ☐ Assistant CSC    ☐ Clerk Of Superior Court | |

| ☐ **ENDORSEMENT (ASSESS FEE)** | **Date Of Endorsement** | **Time** |
|---|---|---|
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | | ☐ AM ☐ PM |
| | **Signature** | |
| | ☐ Deputy CSC    ☐ Assistant CSC    ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** _Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed._

(Over)

AOC-CV-100, Rev. 6/16
© 2016 Administrative Office of the Courts

# STATE OF NORTH CAROLINA

_____ WAKE _____ County

FILED
2018 MAY -7 P 1: 28
WAKE COUNTY, C.S.C
BY_____

| File No. |
| --- |

In The General Court Of Justice
☒ District ☐ Superior Court Division

## GENERAL
## CIVIL ACTION COVER SHEET
☒ **INITIAL FILING** ☐ **SUBSEQUENT FILING**

Rule 5(b), General Rules Of Practice For Superior and District Courts

**Name And Address Of Plaintiff 1**
Shaniqua Burrell
c/o Suzanne Begnoche, Attorney at Law
P.O. Box 2035
Chapel Hill, NC 27515

**Name And Address Of Plaintiff 2**

**VERSUS**

**Name Of Defendant 1**
Duke Energy Progress LLC
410 South Wilmington Street
Raleigh, NC 27601

**Summons Submitted** ☒ Yes ☐ No

**Name And Address Of Defendant 2**
Online Information Services, Inc.
685 W. Fire Tower Road
Winterville, NC 28590

**Summons Submitted** ☒ Yes ☐ No

☒ Jury Demanded In Pleading
☐ Complex Litigation

**Name And Address Of Attorney Or Party, If Not Represented** (complete for initial appearance or change of address)
Suzanne Begnoche
P.O. Box 2035
Chapel Hill, NC 27515

| Telephone No. (919) 960-6108 | Cellular Telephone No. same |
| --- | --- |
| NC Attorney Bar No. 35158 | Attorney E-Mail Address suzanne.begnoche@begnochelaw.com |

☒ Initial Appearance in Case ☐ Change of Address

**Name Of Firm**
Suzanne Begnoche, Attorney at Law

**FAX No.** (919) 500-5289

**Counsel for**
☒ All Plaintiffs ☐ All Defendants ☐ Only *(list party(ies) represented)*

☐ Amount in controversy does not exceed $15,000
☐ Stipulate to arbitration

## TYPE OF PLEADING

*(check all that apply)*

☐ Amend (AMND)
☐ Amended Answer/Reply (AMND-Response)
☐ Amended Complaint (AMND)
☐ Assess Costs (COST)
☐ Answer/Reply (ANSW-Response) *(see Note)*
☐ Change Venue (CHVN)
☒ Complaint (COMP)
☐ Confession Of Judgment (CNJF)
☐ Consent Order (CONS)
☐ Consolidate (CNSL)
☐ Contempt (CNTP)
☐ Continue (CNTN)
☐ Compel (CMPL)
☐ Counterclaim (CTCL) *Assess Court Costs*
☐ Crossclaim *(list on back)* (CRSS) *Assess Court Costs*
☐ Dismiss (DISM) *Assess Court Costs*
☐ Exempt/Waive Mediation (EXMD)
☐ Extend Statute Of Limitations, Rule 9 (ESOL)
☐ Extend Time For Complaint (EXCO)
☐ Failure To Join Necessary Party (FJNP)

*(check all that apply)*

☐ Failure To State A Claim (FASC)
☐ Implementation Of Wage Withholding In Non-IV-D Cases (OTHR)
☐ Improper Venue/Division (IMVN)
☐ Including Attorney's Fees (ATTY)
☐ Intervene (INTR)
☐ Interpleaded (OTHR)
☐ Lack Of Jurisdiction (Person) (LJPN)
☐ Lack Of Jurisdiction (Subject Matter) (LJSM)
☐ Modification Of Child Support In IV-D Actions (MSUP)
☐ Notice Of Dismissal With Or Without Prejudice (VOLD)
☐ Petition To Sue As Indigent (OTHR)
☐ Rule 12 Motion In Lieu Of Answer (MDLA)
☐ Sanctions (SANC)
☐ Set Aside (OTHR)
☐ Show Cause (SHOW)
☐ Transfer (TRFR)
☐ Third Party Complaint *(list Third Party Defendants on back)* (TPCL)
☐ Vacate/Modify Judgment (VCMD)
☐ Withdraw As Counsel (WDCN)
☐ Other *(specify and list each separately)*

**NOTE:** *All filings in civil actions shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a format prescribed by the Administrative Office of the Courts, and the Clerk of Superior Court shall require a party to refile a filing which does not include the required cover sheet. For subsequent filings in civil actions, the filing party must either include a General Civil (AOC-CV-751), Motion (AOC-CV-752), or Court Action (AOC-CV-753) cover sheet.*

AOC-CV-751, Rev. 1/14
© 2014 Administrative Office of the Courts

(Over)

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE

DISTRICT COURT DIVISION

FILE No. 18-CVD-_____

| | |
|---|---|
| SHANIQUA BURRELL, )<br>　　　　　　Plaintiff, )<br> )<br>vs. )<br> )<br>DUKE ENERGY PROGRESS, LLC, )<br>and ONLINE INFORMATION )<br>SERVICES, INC. )<br>　　　　　Defendants. )<br>_____ ) | **COMPLAINT**<br>**JURY TRIAL DEMANDED** |

NOW COMES SHANIQUA BURRELL, by and through counsel, and makes this Complaint against Defendants, DUKE ENERGY PROGRESS, LLC ("DUKE"), and ONLINE INFORMATION SERVICES, INC. ("OIS"), alleging and saying as follows:

## INTRODUCTION:

More than 17.6 million persons, that is, 7% of all adult Americans, are victims of identity theft each year[1]. Creditors and collection agencies can protect victims from identity theft consequences by telling consumer reporting agencies to delete fraudulent accounts from victims' reports. Creditors and collection agencies can also protect victims by immediately

---

[1] Victims of Identity Theft, 2014, 1. U.S. Dept. of Justice, Bureau of Justice Statistics. September 2015, NCJ 248991.

1

halting any collection activity directed at victims. This lawsuit is about a creditor and a collection agency that did none of those things.

Plaintiff, an identity theft victim, brings this action against Defendants, a utility company and its collection agency, for their respective violations of the Fair Debt Collection Practices Act ("FDCPA") at 15 U.S.C. §§ 1692, et seq.; North Carolina's Prohibited Practices by Collection Agencies statute ("PPCA") at N.C.G.S. §§ 58-70-90, et seq.; and North Carolina's Prohibited Acts by Debt Collectors statute ("PADC"), at N.C.G.S. §§ 75-50, et seq. These statutes prohibit creditors and debt collectors from engaging in abusive, deceptive and unfair practices. Plaintiff also makes claims against OIS under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1692, et seq., which prohibits verification of false, disputed information to consumer reporting agencies.

Plaintiff alleges that Defendants tried to make her pay the debt on a fraudulent account set up by an identity thief in her name and falsely verified the fraudulent account as hers to the consumer reporting agencies. Defendants' conduct prevented her from obtaining credit and building a credit history, and was the source to great emotional distress to her.

## JURISDICTION

1.  Jurisdiction of this Court arises pursuant to 15 U.S.C. § 1681p,

15 U.S.C. § 1692k(d), and North Carolina law.

2.     This action arises out of Defendants' violations of state and federal consumer protection laws in their illegal collection of a consumer debt and credit reporting of a fraudulent account.

3.     Venue is proper in this judicial district under N.C.G.S. § 1-80 because Plaintiff's causes of action arose here.

4.     This case is brought within one year of the FDCPA violations in compliance with the statute of limitations at 15 U.S.C. § 1692k(d), within two years of the FCRA violations in compliance with the statute of limitations at 15 U.S.C. § 1681p, and within four years of the PPCA and PADC violations, in compliance with the statute of limitations at N.C.G.S. § 75-16.2.

## PARTIES

### Plaintiff Shaniqua Burrell

5.     Plaintiff SHANIQUA BURRELL ("Ms. Burrell") is a natural person residing in Wake County, North Carolina.

6.     Ms. Burrell is a "consumer" as defined by FCRA at 16 U.S.C. § 1681a(c).

7.     Ms. Burrell is also a "consumer" and/or a person affected by a violation of the FDCPA under 15 U.S.C. §§ 1692a(3) and 1692k .

8.     Ms. Burrell is also a "consumer" as defined by the PADC at

3

N.C.G.S. § 75-50(1).

9.    Ms. Burrell is also a "consumer" as defined by the PPCA at N.C.G.S. § 58-70-90(2).

## Defendant Duke

10.   Defendant Duke Energy Progress, LLC is a North Carolina limited liability company with a principal place of business at 410 South Wilmington Street, Raleigh, North Carolina 27601, and a registered agent, CT Corporation System, at 160 Lake Mine Court, Suite 200, Raleigh, North Carolina 27615.

11.   DUKE is engaged in the production, transmission, and sale of electricity in North Carolina.

12.   With respect to its direct and indirect efforts to collect consumer debts, whether through its own collection agencies or its subsidiaries and their collection agencies, DUKE was and is a "debt collector" as defined by the PADC at N.C.G.S. § 75-50(3).

## Defendant OIS

13.   Defendant Online Information Services, Inc. is a North Carolina corporation with a principal place of business at 685 W. Fire Tower Road, Winterville, North Carolina 28590-9232, and a registered agent, James Blair, at P.O. Box 1489, Winterville, North Carolina 28590-9232.

4

14. OIS collects alleged debts on behalf of various creditors.

15. OIS is engaged in the business of collecting defaulted debts from North Carolina consumers by telephone and mail.

16. OIS was and is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

17. OIS was and is a "collection agency" as defined by the PPCA, N.C.G.S. §§ 58-70-15(b) and 58-70-90(1).

18. At all times relevant to this Complaint, OIS was licensed as a collection agency by the North Carolina Department of Insurance.

19. As the holder of a North Carolina collection agency license, OIS was required to comply with all provisions of North Carolina General Statutes Chapter 58, Article 70, which governs licensure, operating procedures, and prohibited practices of licensed collection agencies.

20. OIS collects alleged debts on behalf of Defendant DUKE.

21. At all times relevant to this complaint, OIS was an agent of DUKE engaged in DUKE's business and acting within the course and scope of its authority, and DUKE is therefore liable for the acts or omissions of OIS.

## FACTUAL ALLEGATIONS

22. In approximately 2017, Plaintiff Shaniqua Burrell applied for credit and was denied.

23.     She later learned that OIS, a collection agency, had placed an delinquent utility service account ("Account") in the amount of $806.13 on her consumer report.

24.     OIS was collecting on the Account on behalf of DUKE.

25.     The Account had supposedly been established in 2012.

26.     Ms. Burrell had not established any utility service with DUKE in 2012.

27.     In fact, on the date the account had been established, Ms. Burrell was incarcerated.

28.     Ms. Burrell contacted the consumer reporting agencies ("CRAs") that were reporting the Account to dispute the Account as fraudulent.

29.     Upon information and belief, based on communications with the CRAs, after receiving Ms. Burrell's dispute, the CRAs asked OIS to re-investigate the Account.

30.     When the CRAs responded to Ms. Burrell's dispute, they notified her that OIS had verified the Account as hers.

31.     Ms. Burrell also contacted DUKE directly to dispute the Account.

32.     Based on the address associated with the Account, she believed that a family member had used her identity to establish the account.

33.     She explained that she was an identity theft victim and that the

6

Account was not hers.

34.    DUKE did not correct its records, withdraw the fraudulent
Account from collection, or request that OIS delete its credit reporting of the
Account.

35.    Defendants effectively continued attempts to obtain payment
from Ms. Burrell by maintaining the Account in collection status and
continuing to report it on Ms. Burrell's credit report.

36.    Because of the length of Ms. Burrell's prior incarceration, she had
little to no credit history when she was released from custody in 2017.

37.    Upon her release, Ms. Burrell had been eager to make a fresh
start, and one of her goals was to rebuild her credit history.

38.    To her dismay, the presence of the delinquent Account on her
consumer reports prevented her from obtaining credit or renting an
apartment.

39.    In fact, the presence of the delinquent Account even made her
credit history worse, as the companies who denied her credit had made so-
called "hard" inquiries that would be visible on her reports when viewed by
other potential creditors.

40.    Such "hard" inquiries in and of themselves further reduce credit
scores.

7

41.    Ms. Burrell felt as if she would not be able to clear up her credit report and rebuild her credit score without paying the fraudulent Account that was not established or authorized by her and for which she had no legal liability.

42.    Ms. Burrell eventually made a police report implicating family members who had lived at the address associated with the Account.

43.    After approximately a year of frustration and credit denials, DUKE eventually admitted to Ms. Burrell that she was not responsible for the Account.

44.    Defendants' conduct caused invasions of Ms. Burrell's privacy in that OIS obtained and saw her credit reports when it should not have seen her reports.

45.    Defendants' conduct also caused invasions of Ms. Burrell's privacy in that she had to explain repeatedly her personal financial history, her criminal record, and her incarceration history to complete strangers, including DUKE, OIS, potential creditors, law enforcement, and legal professionals.

46.    Defendants' conduct also caused Ms. Burrell emotional distress and embarrassment.

47.    Ms. Burrell was frustrated and humiliated that DUKE and OIS

had treated her as if she was the one who had done something wrong.

48. She felt that Defendants were preventing her from making a fresh start.

49. She felt extreme anxiety about whether Defendants might undertake additional collection activity.

50. Every time she had to get her credit report pulled she was nervous about being asked about the utility bill or being denied because it was present.

51. Her anxiety made her restless and unable to sleep at night.

52. Lack of sleep in turn made her irritable, which affected her personal relationships with others.

53. Her emotional unrest also caused disordered eating patterns, so she alternately overate and gained weight, or lost her appetite for periods of time and lost too much weight.

54. Finally, she is now embarrassed within her family because she made a police report implicating family members.

55. She felt she was left with no other option to resolve the situation other than to pay the Account herself, which at the time she could not afford.

56. Defendants' conduct also interfered with Ms. Burrell's normal and usual activities. She repeatedly had to contact DUKE, OIS, the

9

consumer reporting agencies, law enforcement, and attorneys' offices to explain her situation and request help.

57.    If DUKE had just taken adequate steps to verify the identity of the person who established the Account, none of this would have happened.

58.    DUKE's and OIS's policies and procedures regarding debt collection and consumer credit reporting evince willfulness, wantonness, and reckless disregard for the rights and interests of consumers, and directly harmed Ms. Burrell.

## CAUSES OF ACTION

### Count One:
### (As to Defendant OIS)
### Violations of the Fair Credit Reporting Act ("FCRA")
### 15 U.S.C. § 1681, et seq.

59.    The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

60.    Defendant OIS has violated the FCRA at 15 U.S.C. § 1681s-2(b) by actions that include, but are not limited to the following:

    a.    Choosing not to permanently and lawfully correct its internal records to prevent the reporting and verification of false information to the consumer reporting agencies;

    b.    Choosing not to investigate fully, properly, and reasonably the consumer reporting agency's notices of Ms. Burrell's disputes of

10

their credit reporting of the Account;

    c. Choosing not to review all relevant information regarding the disputed Account; and

    d. Responding falsely to a consumer reporting agency.

61. Defendant's noncompliance with the FCRA at 15 U.S.C. § 1681s-2(b) resulted in the verification or re-reporting of information about a fraudulent account.

62. Defendant should, instead, have instructed the consumer reporting agencies to delete the fraudulent information, and Defendant should have permanently blocked the reporting of that information.

63. As a result of Defendant OIS's refusal to comply with the requirements of FCRA, Ms. Burrell has suffered, actual damages, including, but not limited to invasion of privacy, emotional distress, and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury

64. Defendant OIS's conduct, action and inaction in Ms. Burrell's case was willful, rendering it liable for actual, statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

65. In the alternative, Defendant OIS was negligent, entitling the

Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

66.    The Plaintiff is entitled to recover costs and attorney's fees from Defendant OIS in an amount determined by the Court pursuant to 15 U.S.C. § 1681n, or, in the alternative, 15 U.S.C. § 1681o.

**Count Two:**
*(As to Defendant OIS)*
**Violations of the Fair Debt Collection Practices Act**
**15 U.S.C. §§ 1692,** *et. seq.*

67.    The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

68.    The Account that Defendant OIS was trying to collect from Ms. Burrell on behalf of DUKE was a "debt" under 15 U.S.C. § 1692a(5).

69.    Defendant OIS has violated the Fair Debt Collection Practices Act by representing on Ms. Burrell's consumer reports that she owed money on a fraudulent account when she did not, and by verifying this representation in the face of Ms. Burrell's dispute.  This conduct constitutes:

  a.   False, deceptive, or misleading representations or means in connection with the collection of a debt, in violation of the FDCPA at 15 U.S.C. § 1692e;

  b.   False representation of the character, amount, or legal status of the alleged debt, in violation of the FDCPA at 15 U.S.C. § 1692e(2)(A);

12

c.   Communication of credit information which is known or which should be known to be false, in violation of the FDCPA at 15 U.S.C. § 1692e(8);

d.   Use of false representations or deceptive means to attempt to collect a debt, in violation of the FDCPA at 15 U.S.C. § 1692e(10); and

e.   Engagement in unfair or unconscionable means in attempt to collect amounts not permitted by law, in violation of the FDCPA at 15 U.S.C. § 1692f(1).

70.   As a result of Defendant OIS's actions, Plaintiff has suffered actual damages including emotional distress and physical symptoms, and has had to hire an attorney.

71.   As a result of Defendant OIS's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

**Count Three:**
***(As to Defendant OIS)***
**Violations of the N.C. Prohibited Practices by Collection Agencies**
**N.C.G.S. § 58-70-90, *et seq*.**

72.   The allegations of the preceding paragraphs are re-alleged and

incorporated by reference as if set forth fully herein.

73.     The Account that Defendant OIS was trying to collect from Ms. Burrell on behalf of DUKE was a "debt" alleged to be owed or due from a consumer under N.C.G.S. § 58-70-90(3).

74.     At all times relevant, Defendant OIS, acting by and through its officers, agents, employees, or assigns, was engaged in commerce in the state of North Carolina.

75.     Defendant OIS has violated North Carolina's Prohibited Practices by Collection Agencies statute by actions that include, but are not limited to, the following:

   a.   Making accusations to one or more consumer reporting agencies that Ms. Burrell had not paid a debt, in violation of N.C.G.S. § 58-70-95(3).

   b.   Representing to Ms. Burrell via its credit reporting verification that she had delinquent account(s) when she did not, which conduct constitutes a false representation of the character, extent, or amount of an alleged debt, in violation of N.C.G.S. § 58-70-110(4) and an unconscionable means of debt collection, in violation of N.C.G.S. § 58-70-115.

76.     The acts of Defendant OIS are also unfair and deceptive in

14

violation of N.C.G.S. § 75-1.1 in that they offend established public policy, and are immoral, unethical, oppressive, unscrupulous, substantially injurious to consumers, and have the capacity or tendency to mislead.

77.     As a result of Defendant OIS's actions, Plaintiff has suffered injury including emotional distress, anxiety, frustration, and inconvenience in attempting to resolve this matter and has had to hire an attorney.

78.     As a result of Defendant OIS's violations of the PPCA, Plaintiff is entitled to actual damages and to statutory damages in an amount not less than $500.00 but no greater than $4,000.00 pursuant to N.C.G.S. § 58-70-130 for each violation; and, reasonable attorney's fees and costs pursuant to N.C.G.S. § 75-16.

## Count Four:
## (As to Defendant DUKE)
## Violations of the N.C. Prohibited Acts by Debt Collectors
## N.C.G.S. § 75-50, *et seq.*

79.     The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

80.     The Account that DUKE was attempting to collect from Ms. Burrell was a "debt" alleged to be owed or due from a consumer under N.C.G.S. § 75-50(2).

81.     At all times relevant, Defendant DUKE, acting by and through its officers, agents, employees, subsidiaries, or assigns, was engaged in

15

commerce in the state of North Carolina.

82.     Defendant DUKE has violated the North Carolina's Prohibited Practices by Debt Collectors statute directly and indirectly, through its agent(s), by actions that include, but are not limited to, the following: Representing to Ms. Burrell that she had a delinquent account when she did not and attempting to collect from her a debt for which she was not legally liable, which conduct constitutes deceptive or misleading representation during the collection or attempted collection of a debt, in violation of N.C.G.S. § 75-54; a false representation of the character, extent, or amount of an alleged debt, in violation of N.C.G.S. § 75-54(4) and an unconscionable means of debt collection, in violation of N.C.G.S. § 75-55.

83.     Defendant DUKE's acts are also unfair and deceptive in violation of N.C.G.S. § 75-1.1 in that they offend established public policy, and are immoral, unethical, oppressive, unscrupulous, substantially injurious to consumers, and have the capacity or tendency to mislead.

84.     As a result of Defendant DUKE's actions, Plaintiff has suffered injury including emotional distress, anxiety, frustration, and inconvenience in attempting to resolve this matter and has had to hire an attorney.

85.     As a result of Defendant DUKE's violations of the PADC, Plaintiff is entitled to actual damages and to statutory damages in an

amount not less than $500.00 but no greater than $4,000.00 pursuant to
N.C.G.S. § 75-56 for each violation; and, reasonable attorney's fees and costs
pursuant to N.C.G.S. § 75-16.

86. Defendant DUKE is also liable for punitive damages in that it
knew or should have known from its communications with Ms. Burrell that
its continued collection on the account was wrong, but it failed to take steps
to end such collection, and conducted its wrongful behavior described
hereinabove willfully, intentionally, maliciously, and with reckless disregard
for Plaintiff's rights and interests.

**Count Five:**
**(As to Defendant DUKE)**
**Negligence**

87. The allegations of the preceding paragraphs are re-alleged and
incorporated by reference as if set forth fully herein.

88. Defendant DUKE knew or should have known that criminals
deceptively and wrongfully obtain credit and incur debt by means of identity
theft, severely and substantially adversely affecting innocent consumer
victims who neither authorized nor signed the applications to obtain such
credit.

89. Defendant DUKE knew or should have known that, if it did not
verify the accuracy and authenticity of an account application in a consumer's

17

name, a criminal could easily and wrongfully use a stolen identity to obtain credit, and that not verifying the identity of applicants could cause substantial harm to the public, including consumers such as Ms. Burrell.

90.    As a public utility whose main purpose is to provide a public service, Defendant DUKE had a duty to the general public to detect and prevent identity theft in connection with the establishment of utility accounts and a duty to assist identity theft victims in resolving fraudulent accounts and mitigating their damages.

91.    Defendant DUKE had a duty to verify the accuracy and authenticity of the application(s) completed in Ms. Burrell's name before establishing an account in her name and providing service to the address associated with the Account.

92.    Defendant DUKE breached its duty of care when, rather than verifying the accuracy and authenticity of an application in Ms. Burrell's name, it established the Account at the behest of a person whose identity it could not legitimately verify as her.

93.    Defendant DUKE also breached its duty of care when, despite receiving direct and repeated notice from Ms. Burrell that she had not opened Account, but was the victim of identity theft, it refused to withdraw the Account from collection, which was deeply distressing to Ms. Burrell.

94. Defendant DUKE chose not to establish or maintain adequate identity theft avoidance procedures or to help Ms. Burrell mitigate the damages of the identity theft it had facilitated, and Ms. Burrell was proximately injured thereby, as described hereinabove, and is entitled to compensatory and punitive damages for such negligence.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff SHANIQUA BURRELL prays the Court to:

1. On her First Cause of Action, award her actual, statutory, and punitive damages in an amount to be determined at trial against the Defendant named in that Count pursuant to the violations of 15 U.S.C. § 1681, et seq. alleged therein;

2. On her Second Cause of Action, award her actual, statutory, and punitive damages in an amount to be determined at trial against the Defendant named in that Count pursuant to the violations of 15 U.S.C. § 1692, et seq. alleged therein;

3. Award her on her Third Cause of Action actual damages and punitive damages in an amount to be determined at trial and $4000 in statutory damages per violation pursuant to the violations of N.C.G.S. § 58-70-90, et seq. alleged therein;

4. Award her on her Fourth Cause of Action actual damages and punitive

19

damages in an amount to be determined at trial and $4000 in statutory damages per violation pursuant to the violations of N.C.G.S. § 75-50, <u>et seq.</u> alleged therein;

5. Award her on her Fifth Cause of Action compensatory and punitive damages in an amount to be determined at trial;

6. Award her her costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n (or, in the alternative, 15 U.S.C. § 1681o); 15 U.S.C. § 1692k(a)(3); and N.C.G.S. § 75-16.1;

7. Award her pre-judgment and post-judgment interest;

8. Grant trial before a jury on all issues so triable; and

9. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted this day, May 3, 2018 by:

Suzanne Begnoche, Attorney at Law
Attorney for Plaintiff
NCSB # 35158
P.O. Box 2035
Chapel Hill, NC 27515
Telephone: (919) 960-6108
Facsimile: (919) 500-5289
suzanne.begnoche@begnochelaw.com